UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SKINNER BONDING OF OREGON, INC., an Oregon corporation, and MARY ANN SKINNER, an individual, | Civ. No. 05-118-HA<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| CSSG, INC., formerly known as CONSTRUCTION SURETY SERVICES GROUP, INC., a Texas corporation, dba SOUTHWEST ESCROW, ST. JAMES GENERAL AGENCY, INC., a Texas corporation; COMMERCIAL SURETY AGENCY, INC., an Ohio corporation, dba CENTURY SURETY UNDERWRITERS, ROY SIMMONS, an individual, SCOTT CHAPMAN, an individual, DANIEL NEEDHAM, an individual, and DOES 1-15, | |
| Defendants. | |

HAGGERTY, Chief Judge:

     On May 4, 2005, plaintiffs filed their Second Amended Complaint in this action, alleging eight claims for relief against various defendants. The only claim alleged against defendants Commercial Surety Agency, Inc., d/b/a Century Surety Underwriters (CSU), and

1 – OPINION AND ORDER

Daniel Needham (Needham), is the Eighth Claim for Relief for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a). On April 21, 2005, defendants CSU and Needham (collectively referred to as the moving defendants) filed this Motion to Dismiss (Doc. #20) plaintiffs' RICO claim. For the reasons provided below, this motion is denied. However, the court finds that the Second Amended Complaint does not sufficiently plead plaintiffs' RICO claim. In light of a related motion permitting plaintiffs to amend their claims against the other defendants in this action, the court exercises its discretion and grants leave to plaintiffs to also amend this claim.

**FACTUAL BACKGROUND**

The following facts are taken from the Second Amended Complaint. Plaintiff Skinner Bonding of Oregon, Inc. (Skinner Bonding) is an Oregon corporation. Plaintiff Mary Anne Skinner is an individual residing in Oregon and the sole shareholder of Skinner Bonding.

CSSG, St. James,[1] and CS are Texas corporations. Simmons and Chapman are individuals residing in Texas and principals of CSSG, St. James, and CS. CSU is an Ohio insurance agency that provided underwriting services to Skinner Bonding. Needham is or was president of CSU, and Simmons and Chapman are or were officers or employees of CSU.

In 1997, CSU and Skinner Bonding entered into an "Agency Agreement - Bonding" (CSU Bonding Agreement), under which CSU was to act as an underwriter for bonds issued by Skinner Bonding. The CSU Bonding Agreement provided that CSU would extend

---

[1] According to the Second Amended Complaint, St. James was incorporated in July 1997 and filed Articles of Dissolution in February 2002, but continued to do business in interstate commerce after that date.

2 – OPINION AND ORDER

underwriting authority to Skinner Bonding on bonds up to $500,000 without prior approval from CSU, which enabled Skinner Bonding to underwrite many bonds immediately. The CSU Bonding Agreement also provided that Skinner Bonding was responsible for payment of all commissions due CSU regardless of whether Skinner Bonding was paid by the customer.

In March 2001, Chapman and Simmons, after being referred to Skinner Bonding by CSU, expressed interest in purchasing Skinner Bonding. At that time, Mary Anne Skinner and her husband, John Felix, who is now deceased, were considering retirement. In various letters sent through the mail, Chapman and Simmons represented to Skinner Bonding that they owned or worked for St. James and that they wanted to expand their operations into the Northwest. They also represented that they worked with the same underwriters as Skinner Bonding and that St. James wrote bonds that generated more than $6 million in premiums per year. Chapman and Simmons further stated that, as part of the new proposed partnership with Skinner Bonding, they would provide a computer program called TABS, which Skinner Bonding would be required to use.

In reliance on these representations, in May 2001 Mary Anne Skinner, on behalf of Skinner Bonding, entered into a three-year Management Services Agreement with CSSG, a newly-formed company owned and operated by Chapman and Simmons. The Management Services Agreement gave CSSG the authority and responsibility for conducting various marketing and management tasks for Skinner Bonding. These tasks included paying insurance carriers, meaning that Skinner Bonding would remit payment for certain bonds to one of Chapman and Simmons' companies (CSSG, St. James, or CS), and then those companies would remit payment to the appropriate insurance carrier. The Management Services Agreement provided that CSSG would receive $8,000 per month for these services.

3 – OPINION AND ORDER

At the same time, Mary Anne Skinner entered into an Option Purchase Agreement with CSSG, which gave CSSG an option to purchase all of the stock of Skinner Bonding during the period of the Management Services Agreement.

Plaintiffs allege that, subsequent to entering these agreements, when Chapman, Simmons, CSSG, and/or St. James removed money from Skinner Bonding's account every night, instead of paying specific insurance carriers entitled to those funds, they transferred the funds to insurance carriers that were not entitled to them, including to CSU. Plaintiffs allege that this occurred on hundreds of occasions and provide specific dates between June 20, 2001 and February 28, 2002, on which payments cannot be reconciled. Plaintiffs allege that these fraudulent transactions occurred for at least nineteen months after February 2002.

In January 2002, Chapman and Simmons notified Mary Anne Skinner that Skinner Bonding owed CSU $268,000. On February 21, 2002, Needham notified Skinner Bonding that CSU was terminating its underwriting contract with Skinner Bonding based on the recommendation of CSSG, St. James, CS, Chapman and Simmons. The termination letter from Needham indicated that CSU was cancelling the agreement because Skinner Bonding had failed to pay premiums owing to CSU. As a result of this termination, Skinner Bonding was unable to write bonds, which damaged its ability to maintain relationships and customers. In May 2002, CSU reinstated a modified version of the CSU Bonding Agreement, which did not include the provision permitting Skinner Bonding to write bonds without prior approval. On March 4, 2003, CSU again cancelled its underwriting agreement with Skinner Bonding.

In January 2004, Skinner Bonding received a letter from Cumberland Casualty and Surety Company (Cumberland), an insurance carrier with which Skinner Bonding wrote bonds, stating that Skinner Bonding owed Cumberland $529,646.84. Mary Anne Skinner

4 – OPINION AND ORDER

had no prior knowledge that this sum was owing to Cumberland, and this letter alerted her that defendants may have improperly handled Skinner Bonding's funds. After receiving the letter from Cumberland, Mary Anne Skinner discovered that CSSG and St. James did not have the financial strength that was represented to her in 2001. She also discovered that CSSG had paid itself more than the Management Services Agreement permitted and that Chapman and Simmons were closely associated with CSU.

Plaintiffs state that as a result of the moving defendants' fraudulent activities, Skinner Bonding lost existing and potential customers, as well as good will with existing business relationships. Plaintiffs also allege that the debts CSU claims are currently owing it by Skinner Bonding are owing only as a consequence of the fraudulent transactions.

## **STANDARDS**

When considering a motion to dismiss under Rule 12(b)(6), the court must determine whether it appears beyond a doubt that plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Fed. R. Civ. P. 12(b)(6); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Generally, the court considers only the contents of the complaint, and the court must construe all allegations of material fact in the light most favorable to the nonmoving party. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997).

## **DISCUSSION**

The moving defendants urge the court to dismiss plaintiffs' Eighth Claim for Relief because plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b) and have failed to properly plead the other required elements of a RICO claim.

Plaintiffs' RICO claim is based on allegations that all defendants committed multiple

5 – OPINION AND ORDER

acts of mail fraud. In order to state a claim under 18 U.S.C. § 1962(a), a plaintiff must plead facts establishing that (1) the defendant (2) through the commission of predicate criminal acts that constitute a pattern of racketeering activity (3) directly or indirectly invests in, maintains an interest in, or participates in, (4) an enterprise. *Sebastian Int'l v. Russolillo,* 128 F. Supp. 2d 630, 634 (C.D. Cal. 2001) (citations omitted). The court addresses these elements in turn.

**<u>1. Alleged predicate acts of fraud</u>**

Rule 9(b) applies where allegations of fraud form the basis of a RICO claim. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir. 1989) (citation omitted). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) imposes a burden beyond Rule 8(a)'s pleading requirement that the plaintiff need only give the defendant fair notice of its claim. Instead, Rule 9(b) requires particularized allegations of the circumstances constituting fraud. *See Miscellaneous Serv. Workers v. Philco-Ford Corp.,* 661 F.2d 776, 782 (9th Cir. 1981) (the pleader must state the "specific content of the false representations as well as the identities of the parties to the misrepresentations"). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citation omitted).

Here, plaintiffs have failed to allege facts sufficiently specific to meet the requirements of Rule 9(b). Plaintiffs' allegations against the moving defendants include that, "Daniel Needham of CSU notified Skinner Bonding that CSU was terminating its underwriting contract with Skinner Bonding on the recommendation of CSSG, St. James,

6 – OPINION AND ORDER

CS, Inc., Chapman and/or Simmons." Second Am. Compl. ¶ 24. This allegation fails to state essential particularities, such as when this directive was given or how it occurred.

Plaintiffs also allege the following:

> 27. GSSG, St. James, and/or CS, Inc. removed all the money from Skinner Bonding's account every night. GSSG, St. James, and/or CS, Inc. were obligated to pay specific insurance carriers out of those funds. Instead, upon information and belief, <u>CSSG, St. James, CS, Inc. Chapman, and/or Simmons used the mails to improperly transfer funds meant for Cumberland and other insurance carriers to carriers with whom CSSG or its affiliated companies did business, including CSU</u>. Upon information and belief, this occurred on hundreds of occasions, including but not limited to specific instances on or about June 20, 2001, August 3, 2001, August 21, 2001, August 30, 2001, September 1, 2001, September 6, 2001, September 14, 2001, September 18, 2001, September 26, 2001, September 28, 2001, October 3, 2001, October 23, 2001, November 6, 2001, November 7, 2001, November 13, 2001, December 3, 2001, December 5, 2001, December 6, 2001, January 22, 2002, and February 28, 2002. These are dates on or about which CSSG, St. James, and/or CS, Inc. submitted payments to insurance carriers that cannot be reconciled with the funds remitted to CSSG, St. James, and/or CS, Inc. for payment to specific carriers.

Second Am. Compl. ¶ 27 (emphasis added). While these allegations point to CSU's involvement in the alleged fraudulent transactions, they are far from sufficiently specific to meet the requirements of Rule 9(b). They do not state the time, place, or specific content of any allegedly false representations made by CSU or Needham, nor do they provide specific information about the moving defendants' roles in the alleged mail fraud. Defendants rightfully contend that they "remain in the dark as to what specific fraudulent conduct is being attributed to them." CSU and Needham's Reply Mem. in Supp. of Mot. to Dismiss at 3.

**2. Remaining elements of plaintiffs' RICO claim**

The moving defendants argue that plaintiffs' Second Amended Complaint fails to: (1) plead a pattern of racketeering activity; (2) allege RICO damages; or (3) plead a RICO enterprise.

A. Pattern of racketeering activity

In *H.J. Incorporated v. Northwestern Bell Telephone Company,* 492 U.S. 229 (1989), the Supreme Court held that the term "pattern of racketeering activity" requires a plaintiff to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis in original). The moving defendants do not dispute that the alleged predicates are related. Rather, the moving defendants argue that plaintiffs have failed to meet the continuity prong of this test. The continuity prong is satisfied if the plaintiff shows that the predicates include a threat of continued criminal activity, which may "be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 242. The threat of continuity is also established if "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* at 242-43. "The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "'enterprise.'" *Id.* at 243.

Here, the Second Amended Complaint alleges that defendants CSSG, St. James, CS, Chapman and/or Simmons removed money from Skinner Bonding's account every night and, instead of paying specific insurance carriers entitled to those funds, transferred the funds to insurance carriers that were not entitled to them, including to CSU. The Second Amended Complaint also alleges that these fraudulent transactions went on for at least eight months and constituted defendants' regular way of doing business. The court finds that these alleged facts are sufficient to show that the predicate acts constituted the moving defendants' regular way of conducting business. *See Ticor Title Ins. Co. v. Florida*, 937

F.2d 447, 450 (9th Cir. 1991) (plaintiffs adequately plead pattern of racketeering activity based on three forgeries within a thirteen-month period because "[t]he frequency of the forgeries suggests that this practice had become a regular way of doing business"); *see also Richmark Corp. v. Timber Falling Consultants, Inc.*, 730 F. Supp. 1525, 1533 (D. Or. 1990) ("Whether seven months is more than 'a few' months under the facts and circumstances of this case is a question of fact for the jury.").

Continuity is also found in plaintiffs' allegation that the funds owing to CSU by Skinner Bonding, which Needham and CSU continue to demand, are owing only as a consequence of defendants' fraudulent transactions.

B. RICO damages

In the Ninth Circuit, "a plaintiff seeking civil damages for a violation of Section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). Therefore, here, plaintiffs must allege that funds derived from the mail fraud enterprise were used to injure plaintiffs, not merely that plaintiffs were injured by the predicate acts of racketeering.

Paragraph 27 of the Second Amended Complaint alleges that defendants "used the mails to improperly transfer funds meant for Cumberland and other insurance carriers to carriers with whom CSSG or its affiliated companies did business, including CSU." In paragraph 28, plaintiffs allege that this ongoing misapplication of funds created the debts that CSU now claims is owing it by Skinner Bonding. These allegations do not allege an injury caused by the use or investment of racketeering income; rather, they allege that plaintiffs were injured by the predicate acts – namely, the fraudulent misapplication of funds. Therefore, the court finds that plaintiffs' Second Amended Complaint fails to plead

9 – OPINION AND ORDER

damages sufficient to sustain a claim under § 1962(a).

C.  RICO enterprise

The moving defendants argue that plaintiffs have failed to plead the existence of an associated-in-fact enterprise.  RICO defines the term "enterprise" to include (1) "any individual, partnership, corporation, association, or other legal entity," and (2) "any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "[E]stablishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit."  *Chang v. Chen*, 80 F.3d 1293, 1297 (9th Cir. 1996) (citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)).

"At a minimum, to be an enterprise, an entity must exhibit some sort of structure [ ] for the making of decisions, whether it be hierarchical or consensual."  *Id.* at 1299 (internal quotations and citation omitted).  The structure must provide a "mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis."  *Id.* 1299 (citation omitted).  This structure requirement, however, "does not mean that every decision must be made by the same person, or that authority may not be delegated."  *Id.* (citation omitted).  The separate entity requirement may be met by showing "the involvement of a corporation, which has an existence separate from its participation in the racketeering activity . . . ."  *Id.* at 1300 (citing *United States v. Feldman*, 853 F.2d 648, 660 (9th Cir. 1988); *United States v. Tillett*, 763 F.2d 628, 632 (9th Cir. 1985)).

Here, plaintiffs allege that several business entities were involved in the racketeering activity and that each entity, including CSU, has or had a legal existence separate from the racketeering activities.  Specifically, the Second Amended Complaint alleges that CSSG, St. James, and CS are Texas corporations and that CSU is an Ohio corporation; that Needham is

10 – OPINION AND ORDER

a principal of CSU; and that Simmons and Chapman were principals of CSSG, St. James, and CS at all relevant times. Furthermore, plaintiffs have alleged that each of these business entities participated in the racketeering activity and existed at least in part for the purpose of completing the alleged fraudulent transactions. Therefore, the court finds that plaintiffs have sufficiently alleged the existence of an enterprise. *See Feldman*, 853 F.2d at 660 (holding that alleging the involvement of a corporate entity is sufficient to meet the requirement for a separate structure); *United States v. Kirk,* 844 F.2d 660, 664 (9th Cir. 1988) (same).

**3. Leave to Amend**

Despite the deficiencies in the Second Amended Complaint, the court cannot find at this juncture that it is beyond a doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. The court grants leave to plaintiffs to amend their claim to include allegations, if any, that satisfy the pleading requirements of a RICO claim, as set forth above.

///

///

///

///

///

///

///

///

**CONCLUSION**

The moving defendants' Motion to Dismiss (Doc. #20) plaintiffs' RICO claim is DENIED. The court exercises its discretion and grants leave to plaintiffs to amend this claim. Plaintiffs are ordered to submit a more definite Complaint that appropriately sets each alleged element of their RICO claim, as provided in the Federal Rules of Civil Procedure, 18 U.S.C. 1962(a), and this Opinion and Order. Plaintiffs' Third Amended Complaint shall be filed no later than August 12, 2005.

IT IS SO ORDERED.

Dated this ____22_ day of July, 2005.

                                                    /s/Ancer L.Haggerty
                                                        ANCER L. HAGGERTY
                                              United States District Judge