UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SKINNER BONDING OF OREGON, INC., an Oregon corporation, and MARY ANNE SKINNER, an individual, | Civ. No. 05-118-HA<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| CSSG, INC., formerly known as CONSTRUCTION SURETY SERVICES GROUP, INC., a Texas corporation, dba SOUTHWEST ESCROW, ST. JAMES GENERAL AGENCY, INC., a Texas corporation; COMMERCIAL SURETY AGENCY, INC., an Ohio corporation, dba CENTURY SURETY UNDERWRITERS, ROY SIMMONS, an individual, SCOTT CHAPMAN, an individual, DANIEL NEEDHAM, an individual, and DOES 1-15, | |
| Defendants. | |

HAGGERTY, Chief Judge:

On May 4, 2005, plaintiffs filed their Second Amended Complaint in this action, alleging eight claims for relief against various defendants. At issue here are three claims alleged against CSSG, Inc. (CSSG), St. James General Agency, Inc. (St. James), CS, Inc.

1 – OPINION AND ORDER

(CS), Roy Simmons (Simmons), and Scott Chapman (Chapman) (collectively referred to as the "moving defendants"). On May 13, 2005, the moving defendants filed this Motion to Dismiss Fraud and RICO Claims or Alternatively for More Definite Statement (Doc. #37), arguing that the following claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6): (1) Third Claim for Relief for Fraud in the Inducement; (2) Fourth Claim for Relief for Fraud; and (3) Eighth Claim for Relief for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a). In the alternative, the moving defendants seek a more definite statement under Federal Rule of Civil Procedure 12(e). For the reasons that follow, the moving defendants' motion to dismiss is denied and the alternative motion for a more definite statement is granted.

**FACTUAL BACKGROUND**

The following facts are taken from the Second Amended Complaint. Plaintiff Skinner Bonding of Oregon, Inc. (Skinner Bonding) is an Oregon corporation. Plaintiff Mary Anne Skinner is an individual residing in Oregon and the sole shareholder of Skinner Bonding.

CSSG, St. James,[1] and CS are Texas corporations. Simmons and Chapman are individuals residing in Texas and principals of CSSG, St. James, and CS. Commercial Surety Agency, Inc., d/b/a Century Surety Underwriters (CSU), is an Ohio insurance agency that provided underwriting services to Skinner Bonding. Daniel Needham (Needham) is or was president of CSU, and Simmons and Chapman are or were officers or employees of CSU.

---

[1] According to the Second Amended Complaint, St. James was incorporated in July 1997 and filed Articles of Dissolution in February 2002, but continued to do business in interstate commerce after that date.

In 1997, CSU and Skinner Bonding entered into an "Agency Agreement - Bonding" (CSU Bonding Agreement), under which CSU was to act as an underwriter for bonds issued by Skinner Bonding. The CSU Bonding Agreement provided that CSU would extend underwriting authority to Skinner Bonding on bonds up to $500,000 without prior approval from CSU, which enabled Skinner Bonding to underwrite many bonds immediately. The CSU Bonding Agreement also provided that Skinner Bonding was responsible for payment of all commissions due CSU regardless of whether Skinner Bonding was paid by the customer.

In March 2001, Chapman and Simmons, after being referred to Skinner Bonding by CSU, expressed interest in purchasing Skinner Bonding. At that time, Mary Anne Skinner and her husband, John Felix, who is now deceased, were considering retirement. In various letters sent through the mail, Chapman and Simmons represented to Skinner Bonding that they owned or worked for St. James and that they wanted to expand their operations into the Northwest. They also represented that they worked with the same underwriters as Skinner Bonding and that St. James wrote bonds that generated more than $6 million in premiums per year. Chapman and Simmons further stated that, as part of the new proposed partnership with Skinner Bonding, they would provide a computer program called TABS, which Skinner Bonding would be required to use.

In reliance on these representations, in May 2001 Mary Anne Skinner, on behalf of Skinner Bonding, entered into a three-year Management Services Agreement with CSSG, a newly-formed company owned and operated by Chapman and Simmons. The Management Services Agreement gave CSSG the authority and responsibility for conducting various marketing and management tasks for Skinner Bonding. These tasks included paying insurance carriers, meaning that Skinner Bonding would remit payment for certain bonds to

3 – OPINION AND ORDER

one of Chapman and Simmons' companies (CSSG, St. James, or CS), and then those companies would remit payment to the appropriate insurance carrier. The Management Services Agreement provided that CSSG would receive $8,000 per month for these services. At the same time, Mary Anne Skinner entered into an Option Purchase Agreement with CSSG, which gave CSSG an option to purchase all of the stock of Skinner Bonding during the period of the Management Services Agreement.

Plaintiffs allege that, subsequent to entering these agreements, when the moving defendants removed money from Skinner Bonding's account every night, instead of paying specific insurance carriers entitled to those funds, they transferred the funds to insurance carriers that were not entitled to them, including to CSU. Plaintiffs allege that this occurred on hundreds of occasions and provide specific dates between June 20, 2001 and February 28, 2002, on which payments cannot be reconciled. Plaintiffs allege that these fraudulent transactions occurred for at least nineteen months after February 2002.

In January 2002, Chapman and Simmons notified Mary Anne Skinner that Skinner Bonding owed CSU $268,000. On February 21, 2002, Needham notified Skinner Bonding that CSU was terminating its underwriting contract with Skinner Bonding based on the recommendation of CSSG, St. James, CS, Chapman and Simmons. The termination letter from Needham indicated that CSU was cancelling the agreement because Skinner Bonding had failed to pay premiums owing to CSU. As a result of this termination, Skinner Bonding was unable to write bonds, which damaged its ability to maintain relationships and customers. In May 2002, CSU reinstated a modified version of the CSU Bonding Agreement, which did not include the provision permitting Skinner Bonding to write bonds without prior approval. On March 4, 2003, CSU again cancelled its underwriting agreement with Skinner Bonding.

4 – OPINION AND ORDER

In January 2004, Skinner Bonding received a letter from Cumberland Casualty and Surety Company (Cumberland), an insurance carrier with which Skinner Bonding wrote bonds, stating that Skinner Bonding owed Cumberland $529,646.84. Mary Anne Skinner had no prior knowledge that this sum was owing to Cumberland, and this letter alerted her that the moving defendants may have improperly handled Skinner Bonding's funds. After receiving the letter from Cumberland, Mary Anne Skinner discovered that CSSG and St. James did not have the financial strength that was represented to her in 2001. She also discovered that CSSG had paid itself more than the Management Services Agreement permitted and that Chapman and Simmons were closely associated with CSU.

Plaintiffs state that as a result of the moving defendants' fraudulent activities, Skinner Bonding lost existing and potential customers, as well as good will with existing business relationships. Plaintiffs also allege that the debts CSU claims are currently owing it by Skinner Bonding are owing only as a consequence of the fraudulent transactions.

## STANDARDS

When considering a motion to dismiss under Rule 12(b)(6), the court must determine whether it appears beyond a doubt that plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Fed. R. Civ. P. 12(b)(6); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Generally, the court considers only the contents of the complaint, and the court must construe all allegations of material fact in the light most favorable to the nonmoving party. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997).

## DISCUSSION

Plaintiffs allege fraud in their Third and Fourth Claims for Relief and allege mail fraud as the predicate acts in their Eighth Claim for Relief based on RICO violations. The

5 – OPINION AND ORDER

moving defendants argue that plaintiffs have failed to properly plead their fraud allegations and the elements of their RICO claim.

**1. Plaintiff's fraud allegations**

Plaintiffs' Third, Fourth, and Eighth Claims for Relief contain allegations of fraud against the moving defendants.[2] Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) imposes a burden beyond Rule 8(a)'s pleading requirement that the plaintiff need only give the defendant fair notice of its claim. Instead, Rule 9(b) requires particularized allegations of the circumstances constituting fraud. *See Miscellaneous Serv. Workers v. Philco-Ford Corp.,* 661 F.2d 776, 782 (9th Cir. 1981) (the pleader must state the "specific content of the false representations as well as the identities of the parties to the misrepresentations").

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citation omitted). The plaintiff must also set forth an explanation as to why the statement or omission complained of was false or misleading. *In re Glenfed, Inc. Secur, Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *remanded on other grounds*. "[W]hile mere conclusory allegations of fraud are insufficient, statements of the time, place, and nature of the alleged fraudulent activities are sufficient." *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987) (citations omitted).

A. Third Claim for Relief - Fraud in the Inducement

---

[2] Plaintiffs' Eighth Claim for Relief is also against defendants Needham and CSU, who filed separate motions to dismiss.

In their Third Claim for Relief, plaintiffs allege that:

> In order to induce plaintiffs to enter into the Option Purchase Agreement and Management Services Agreement, CSSG, St. James, CS, Inc., Chapman, and Simmons made the false and material representations that Chapman and Simmons's companies wrote bonds generating premiums in excess of $6 million per year, and that the size and financial condition of Chapman and Simmons' companies, including but not limited to St. James, would be a benefit to Skinner Bonding.

Second Am. Compl. ¶ 38. Plaintiffs further allege that these representations were false because "CSSG and St. James had significantly less financial strength than Chapman and Simmons had represented." Second Am. Compl. ¶ 29. Plaintiffs allege that they relied on these false representations and would not have entered into the Marketing Services or Option Purchase Agreements if they had known CSSG's and St. James's true financial condition. Second Am. Compl. ¶ 39-40.

These allegations fail to state the time, place, and manner in which the misrepresentations were made. Furthermore, plaintiffs have provided no facts supporting the vague allegation that the representations about the companies' finances were false. Therefore, the court finds that plaintiffs' Third Claim for Relief does not meet the requirements of Rule 9(b).

In their memorandum to this court, plaintiffs propose to amend this claim by adding the following:

> The financial strength representation was made in person and over the telephone multiple times over a period of time from approximately February 2001 until the Agreements were signed in May of 2001. The financial strength representation was made to at least the following key employees at Skinner Bonding: Mary Anne Skinner, John Felix, Steve Altishin.

Pls.' Opp. to Mots. to Dismiss, Ex. 1 at 2. Plaintiffs also propose to add this allegation:

> Plaintiffs are informed and believe that the financial strength representation was false . . . and that, in particular, St. James did not generate premiums in excess of $6 million annually but instead generated a significantly lesser

7 – OPINION AND ORDER

   amount of premiums that resulted in commission revenue in or around the
   amount of $1.3 million annually or less.

Pls.' Opp. to Mots. to Dismiss, Ex. 1 at 6.

  The moving defendants argue that even these proposed changes are not sufficiently specific under Rule 9(b). While it is true that allegations based on "information and belief" generally do not satisfy the degree of particularity required under Rule 9(b), this rule is "relaxed as to matters peculiarly within the opposing party's knowledge." *Wool,* 818 F.2d at 1439 (internal quotations and citation omitted). This exception applies in situations where the plaintiff could not be expected to have personal knowledge of the facts constituting the wrongdoing. *Id.* (citation omitted). In such cases, Rule 9(b) can be satisfied by a statement of the facts upon which the belief is grounded. *Id.*

  Here, the court agrees that plaintiffs cannot be expected to know St. James' actual financial situation, especially in light of the alleged misrepresentations about that very fact. However, the statement that Mary Anne Skinner "investigated further and discovered that CSSG and St. James had significantly less financial strength," Second Am. Compl. ¶ 29, does not supply sufficient facts to fall within the exception. Nonetheless, the court will not dismiss this claim at this juncture. Plaintiffs are granted leave to amend this claim and are advised to include a statement of facts upon which their allegations about the financial strength of CSSG and St. James are based.

B. Fourth Claim for Relief - Fraud

  In their Fourth Claim for Relief for Fraud, plaintiffs allege that the moving defendants falsely represented that, "when Skinner Bonding remitted payments for amounts owing to Cumberland, CSSG was paying Cumberland those amounts as contemplated in the Management Services Agreement." Second Am. Compl. ¶ 43. The moving defendants

argue that these allegations fail to aver the circumstances of the alleged fraud with the particularity required by Rule 9(b). The court agrees, as there is no specific reference to the time or place that such representations were made.

Plaintiffs propose to amend this claim by adding allegations that, based on information and belief, these payment representations were false and that each of the moving defendants failed to apply Skinner Bonding's funds in accordance with its instructions but, instead, expended the funds for their own purposes. Pls.' Mem. in Opp., Ex. 1 at 7-8. The court grants plaintiffs leave to amend and, again, cautions that any claims not plead with the specificity required by Rule 9(b) are subject to dismissal.

C.  Eighth Claim for Relief - RICO violations based on fraud

In their Eighth Claim for Relief, plaintiffs allege RICO violations against all defendants. In order to state a claim under 18 U.S.C. § 1962(a), a plaintiff must plead facts establishing that (1) the defendant (2) through the commission of predicate criminal acts that constitute a pattern of racketeering activity (3) directly or indirectly invests in, maintains an interest in, or participates in, (4) an enterprise. *Sebastian Int'l v. Russolillo,* 128 F. Supp. 2d 630, 634 (C.D. Cal. 2001) (citations omitted).

At issue here is the second element of a RICO claim – the predicate criminal acts. To establish this element, plaintiffs allege that defendants committed multiple acts of mail fraud. Because Rule 9(b) applies to RICO claims, allegations of fraud which form the basis of a RICO claim must "identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9th Cir. 1989) (citation omitted).

Here, plaintiffs allege that:

> 27. GSSG, St. James, and/or CS, Inc. removed all the money from Skinner Bonding's account every night. GSSG, St. James, and/or CS, Inc. were obligated to pay specific insurance carriers out of those funds. Instead, upon information and belief, <u>CSSG, St. James, CS, Inc. Chapman, and/or Simmons used the mails to improperly transfer funds meant for Cumberland and other insurance carriers to carriers with whom CSSG or its affiliated companies did business, including CSU</u>. Upon information and belief, this occurred on hundreds of occasions, including but not limited to specific instances on or about June 20, 2001, August 3, 2001, August 21, 2001, August 30, 2001, September 1, 2001, September 6, 2001, September 14, 2001, September 18, 2001, September 26, 2001, September 28, 2001, October 3, 2001, October 23, 2001, November 6, 2001, November 7, 2001, November 13, 2001, December 3, 2001, December 5, 2001, December 6, 2001, January 22, 2002, and February 28, 2002. These are dates on or about which CSSG, St. James, and/or CS, Inc. submitted payments to insurance carriers that cannot be reconciled with the funds remitted to CSSG, St. James, and/or CS, Inc. for payment to specific carriers.

Second Am. Compl. ¶27 (emphasis added). The Second Amended Complaint also alleges that the moving defendants were working in conjunction with defendants CSU and Needham:

> 24. On or about February 21, 2002, the day after St. James filed its Articles of Dissolution, Daniel Needham of CSU notified Skinner Bonding that CSU was terminating its underwriting contract with Skinner Bonding on the recommendation of CSSG, St. James, CS, Inc., Chapman and/or Simmons.

Second Am. Compl. ¶ 24.

Although these allegations include some specific dates, overall they are too generalized and conclusory to meet the particularity requirements of Rule 9(b). The court grants leave for plaintiffs to amend this claim and identify the time, place, and manner of each alleged fraud.

**2. Remaining elements of plaintiffs' RICO claim**

The moving defendants also argue that plaintiffs' Second Amended Complaint fails to: (1) plead a pattern of racketeering activity; (2) allege RICO damages; or (3) plead a RICO enterprise.

<u>A. Pattern of racketeering activity</u>

10 – OPINION AND ORDER

In *H.J. Incorporated v. Northwestern Bell Telephone Company,* 492 U.S. 229 (1989), the Supreme Court held that the term "pattern of racketeering activity" requires a plaintiff to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis in original). The moving defendants do not dispute that the alleged predicates are related. Rather, the moving defendants argue that plaintiffs have failed to meet the continuity prong of this test. The continuity prong is satisfied if the plaintiff shows that the predicates include a threat of continued criminal activity, which may "be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 242. The threat of continuity is also established if "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* at 242-43. "The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "'enterprise.'" *Id.* at 243.

Here, the Second Amended Complaint alleges that the moving defendants removed money from Skinner Bonding's account every night and, instead of paying specific insurance carriers entitled to those funds, transferred the funds to insurance carriers that were not entitled to them, including to CSU. The Second Amended Complaint also alleges that this misapplication of payments went on for at least eight months and constituted defendants' regular way of doing business. The court finds that these alleged facts are sufficient to show that the predicate acts constituted the moving defendants' regular way of conducting business. *See Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991) (plaintiffs adequately plead pattern of racketeering activity based on three forgeries within a

11 – OPINION AND ORDER

thirteen-month period because "[t]he frequency of the forgeries suggests that this practice had become a regular way of doing business"); *see also Richmark Corp. v. Timber Falling Consultants, Inc.*, 730 F. Supp. 1525, 1533 (D. Or. 1990) ("Whether seven months is more than 'a few' months under the facts and circumstances of this case is a question of fact for the jury.").

Continuity is also found in plaintiffs' allegation that the funds owing to CSU by Skinner Bonding, which Needham and CSU continue to demand, are owing only as a consequence of defendants' fraudulent transactions.

B. RICO damages

In the Ninth Circuit, "a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). Therefore, here, plaintiffs must allege that funds derived from the mail fraud enterprise were used to injure plaintiffs, not merely that plaintiffs were injured by the predicate acts of racketeering.

Paragraph 27 of the Second Amended Complaint alleges that defendants "used the mails to improperly transfer funds meant for Cumberland and other insurance carriers to carriers with whom CSSG or its affiliated companies did business, including CSU." In paragraph 28, plaintiffs allege that this ongoing misapplication of funds created the debts that CSU now claims is owing it by Skinner Bonding. These allegations do not allege an injury caused by the use or investment of racketeering income; rather, they allege that plaintiffs were injured by the predicate acts – namely, the fraudulent misapplication of funds. Therefore, the court finds that plaintiffs' Second Amended Complaint fails to plead damages sufficient to sustain a claim under § 1962(a).

In plaintiffs' memorandum to this court, they assert that "Defendants then used that racketeering income to hire employees to perform the back office support for Skinner Bonding and to install the TABS computer system at Skinner Bonding's offices." Pls.' Opp. to Mots. to Dismiss at 8. Plaintiffs also assert that defendants used the misappropriated funds to conceal these fraudulent acts. *Id.* The court grants leave to plaintiffs to amend this claim to include allegations, if any, that they were injured by the use or investment of the racketeering income.

## C. RICO enterprise

The moving defendants argue that plaintiffs have failed to plead the existence of an associated-in-fact enterprise. RICO defines the term "enterprise" to include (1) "any individual, partnership, corporation, association, or other legal entity," and (2) "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[E]stablishing the existence of an associated-in-fact enterprise requires proof (1) of an ongoing organization, formal or informal, and (2) that the various associates function as a continuing unit." *Chang v. Chen*, 80 F.3d 1293, 1297 (9th Cir. 1996) (citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)).

"At a minimum, to be an enterprise, an entity must exhibit some sort of structure [ ] for the making of decisions, whether it be hierarchical or consensual." *Id.* at 1299 (internal quotations and citation omitted). The structure must provide a "mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis." *Id.* 1299 (internal quotations and citation omitted). This structure requirement, however, "does not mean that every decision must be made by the same person, or that authority may not be delegated." *Id.* (citation omitted). The separate entity requirement may be met by showing "the involvement of a corporation, which has an existence separate from its participation in

13 – OPINION AND ORDER

the racketeering activity . . . ." *Id.* at 1300 (citing *United States v. Feldman*, 853 F.2d 648, 660 (9th Cir. 1988); *United States v. Tillett*, 763 F.2d 628, 632 (9th Cir. 1985)).

Here, plaintiffs allege that several business entities were involved in the racketeering activity and that each entity has or had a legal existence separate from the racketeering activities. Specifically, the Second Amended Complaint alleges that CSSG, St. James, and CS are Texas corporations and that CSU is an Ohio corporation; that Needham is a principal of CSU; and that Simmons and Chapman were principals of CSSG, St. James, and CS at all relevant times. Furthermore, plaintiffs have alleged that each of these business entities participated in the racketeering activity and existed at least in part for the purpose of completing the alleged fraudulent transactions. Therefore, the court finds that plaintiffs have sufficiently alleged the existence of an enterprise. *See Feldman*, 853 F.2d at 660 (holding that alleging the involvement of a corporate entity is sufficient to meet the requirement for a separate structure); *United States v. Kirk,* 844 F.2d 660, 664 (9th Cir. 1988) (same).

As to the individual defendants, plaintiffs have alleged that Chapman and Simmons were officers in these corporations, thereby permitting liability to attach to them. *See Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 945 F. Supp. 1355, 1384 (D. Or. 1996) ("for liability to attach to individual defendants, plaintiff must show that the individuals participated in the operation or management of the enterprise which requires that the defendant have some part in directing the enterprise's affairs . . . .") (internal quotations and citation omitted).

**3. Plaintiffs' request to add claims under 18 U.S.C. §§ 1962(b) and (c)**

Plaintiffs request leave to add claims under 18 U.S.C. §§ 1962(b) and (c). This request is granted.

14 – OPINION AND ORDER

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

The moving defendants' Motion to Dismiss Fraud and RICO Claims or Alternatively for More Definite Statement (Doc. #37) is GRANTED in part and DENIED in part. It is granted as to the motion for a more definite statement and it is denied as to the alternative motion to dismiss. Plaintiffs are ordered to submit a more definite Complaint that sets forth each alleged claim and its elements with sufficient particularity, as provided in the Federal Rules of Civil Procedure, 18 U.S.C. § 1962, and this Order. Plaintiffs' Third Amended Complaint shall be filed no later than August 12, 2005.

    IT IS SO ORDERED.

    Dated this _22____ day of July, 2005.

                                                            /s/Ancer L.Haggerty

                                                    ANCER L. HAGGERTY
                                                  United States District Judge